## OLCOTT *vs.* WOOD and SMITH.

A party who seeks the specific performance of an agreement to convey lands, or damages in lieu of such performance, does not thereby make a claim to an estate in fee, within the meaning of the statute prohibiting the submission of claims to real estate in fee or for life to arbitration.

Therefore, where a suit is pending, in which the matter in controversy savors of the personalty, and the relief sought is a specific performance in respect to lands of which the title is admitted to be in the defendant, or damages, the matters in issue in such suit may be submitted to an arbitrator, and his award will be binding.

THIS action was brought upon an arbitration bond, dated 21st March, 1845, reciting the pendency of a suit in the late court of chancery of this state, wherein the plaintiff was complainant and the defendants and others were defendants, and a cross-bill filed by the said Lewis Wood, against the plaintiff Olcott and others, and the submission by the said parties of the matters in controversy to the arbitrament of certain arbitrators. The declaration set forth the award of the sole arbitrator to whom the matters were finally submitted, whereby he directed that the said Lewis Wood should pay to the plaintiff, within three months from the date of the award, the sum of $2821 with interest; and the breach assigned was the nonpayment of the money. The first plea was *nil debet.* The second plea stated that the matters submitted to the arbitrator were the matters in issue in the chancery suits; that upon the original bill the issue substantially was as follows. T. Olcott claimed in his bill that he was entitled to a conveyance of the undivided two-thirds part of a certain lot of pine lands in Pennsylvania, commonly called the "Rew lands," under certain articles of agreement which had been assigned to one Smith for his benefit, before the deed of conveyance in fee had been given to Wood. Wood, in his answer, and in his cross-bill, claimed that Olcott had no title to the Rew lands, and that he, Wood, was entitled to the undivided one-third part of certain lands called the Bingham lands, and he asked that Olcott should be decreed to pay him damages by reason of his agent having refused to permit him to take his share of the profits. That those causes were

at issue, and that Mr. Cady the arbitrator passed upon those questions alone, in making his award.

The replication to the second plea was that the submission in question was not made respecting the claims of the said parties to an estate in fee, in real estate, as the defendants had alleged. The cause was tried at the Albany circuit in April, 1849, before Justice Wright, without a jury; who nonsuited the plaintiff, on the ground that the submission was forbidden by statute, and that consequently both the submission and the award were void. The plaintiff appealed.

*S. Stevens*, for the plaintiff, insisted that the submission and award upon which this suit was brought, were not within the prohibition of the statute, (2 *R. S.* 446, § 2, 2*d* ed.) and were therefore valid. I. The object and intent of the statute is, to prohibit the submission to arbitration, of conflicting claims to the title of an estate in fee or for life, in real estate. By the notes of the revisers, it appears, that the intention was to enact the ancient rule of the common law, to wit, that the freehold or inheritance could not be determined by arbitrament, and also to prohibit the award taking effect as an estoppel, upon the right or title to the freehold or inheritance. (3 *R. S.* 774, 2*d ed. title* 14, *note to* § 2.) By the ancient common law, an award was not conclusive upon the title to the freehold or fee, and therefore actions real, which could not be for a less estate than a freehold, could not be submitted to arbitrament. The reason was, that such an estate could not be transferred by the parties themselves, without livery of seisin, and an award could not supply the place of livery; and if land was permitted thus to be aliened, it might be done collusively, without the consent of the superior lord. (1 *Rolle's Abr.* 442, *Arbitrament A. Id.* 444, *B.* 14. 3 *Bl. Com.* 16. 1 *Bac. Abr.* 303, *Arbitrament A. ed. of* 1842. 1 *Com. Dig.* 660, *Arbitrament D.* 3.) So by the common law, the title to an estate for years, or to an annuity secured upon lands, or a partition between tenants in common, could not be determined by arbitrament. But submissions of controversies of this kind are authorized by the statute.

The prohibition only extends to *claims* to an estate in fee or for life. It does not prohibit the submission of any claim upon a contract, legal or equitable, express or implied, whatever may be the subject of that contract, and whether the remedy upon the contract, be at law or equity. Consequently, a claim for the specific performance of a contract to convey lands in fee or for life, may be submitted to arbitration. In such case the question of title to the land does not arise, any more than if the claim were for damages for the non-performance of such a contract. So a claim for a trespass upon an estate in fee or for life, may be submitted to arbitration, although the title may come in question.

II. The controversy in the court of chancery was not about the *title* to the Rew, or the Bingham lands. The title to the Rew lands was admitted to be in Wood. The complainant in the original bill claimed that by contract he was entitled to have a conveyance of two-thirds of those lands, or a compensation in damages in lieu thereof. By the cross-bill, the title to the Bingham lands was conceded to be in Olcott; but Wood claimed that by contract he was entitled to one-third of those lands, and claimed damages only for the breach of that contract. The claim, therefore, in the original bill, was in the nature of a specific performance of the contract to convey those lands, or for damages for the breach of that contract. The claim in the cross-bill was simply for damages, for the breach of the contract to give Wood a participation of one-third in the Bingham lands. The submission of such a controversy to arbitration is not prohibited by the statute. The case in 6 Paige, 288, is not like this case. In that case, the claim of the respective parties was under conflicting titles; besides, the opinion in that case on that subject, is a mere dictum. No award was ever made. That part of the relief sought in equity, which prays a conveyance of two-thirds of the Rew lands, is analogous to a bill for partition, where the complainant's right is only equitable. And as to the other kind of relief prayed, it is merely a claim for damages for the breach of a contract. (4 *John. Ch. R.* 271.)

III. But, however the court may regard the relief sought by

Olcott *v.* 'Wood.

the suit in equity, the claim submitted to the arbitrators was merely a claim for damages for a violation of contract in regard to lands. The submission was between Wood and Olcott alone; the other parties to the suit were not parties to the submission. Wood had conveyed the Rew lands, so that he could not convey any part of them to Olcott, and Wood did not claim a conveyance of the Bingham lands, so that as between those parties, all that could be claimed by either of them before the arbitrator was damages for the breach of their respective alleged contracts, and the submission only provides for the payment of damages.

IV. The decision of the supreme court refusing to set aside the award, is conclusive between the parties, as to the power of the arbitrator and the validity of the award. If the submission was void, the arbitrator had no power. If the arbitrator makes an award under a submission which is void, he as much exceeds his power as when he awards upon a matter not submitted to him by a valid submission. *In either case the arbitrator exceeds his powers,* which is one of the grounds upon which the court is required to vacate the award. (2 *R. S.* 447, § 10, *subd.* 4, *2d ed.*)

*N. Hill, Jun.* for the defendants. I. The pleadings in the two chancery suits plainly show that the subject matter submitted was a controversy respecting *titles to lands;* Olcott claiming a part of the *Rew lands,* and Wood a part of the *Bingham lands.* II. The statute forbidding submissions respecting claims to real estate is not confined to cases where the *legal title* alone is in issue, but clearly embraces controversies as to *equitable titles* also. (2 *R. S.* 541, §§ 1, 2. 6 *Paige,* 288.) (1.) This is plain upon the *language* of the statute, and the legislature must be deemed to have *meant what they have said.* (20 *Wend.* 561-2. *Smith's Com. on Stat.* 627. 1 *T. R.* 51. 2 *Hill,* 35, *et seq.* 4 *Id.* 384, 394-5, 413.) The first section authorizes submissions of all controversies, whether they relate to matters of *legal* or *equitable* cognizance, except, &c. (2 *R. S.* 541, § 1.) The second section prohibits *such* submission, i. e. of *legal* or *equitable* controversies, if they involve claims "to

any estate in fee or for life," &c.. (2 *R. S.* 541, § 2.) The word *any*, moreover, in connection with *estate*, obviously contemplates the known division of estates into *legal* and *equitable ;* for there is but one kind of *legal* " estate in fee or for life," and *any* would be senseless. (*Crabb on Real Prop.* 5. 55 *Law Lib.* 6. 4 *Hill*, 384, 394–5, 413. 2 *Id.* 35, *et seq.*) (2.) This construction is not only required by the language of the statute, but by its *reason* and *spirit.* The obvious reason of the prohibition was that controversies respecting real estate were too *important and intricate* to be disposed of by arbitration. (2 *R. S.* 774, *revisers' note.*) This reason applies with peculiar force to claims respecting *equitable* estates ; for the absence of legal title does not simplify the controversy, but renders it *more intricate.* (*See Crabb on Real Property*, 5. 1 *Barb. Sup. Ct. Rep.* 499. 1 *Paige,* 147.) Again, a claim of the *equitable estate* presupposes a counter-claim of the *legal estate ;* and both were therefore involved in the controversy submitted. III. It makes no difference whether the claim be for the land itself, or an equivalent in money, provided the submission involves the necessity of deciding as to the title. The prohibition is against submissions *respecting the claim* to. an estate ; i. e. in any manner *relating to the claim or right.* (2 *R. S.* 541, § 2.) The arbitrator in this case, before he could determine any part of the claim or controversy, was necessarily obliged to pass on the question of title. (*See 2 Barb. Sup. Court Rep.* 432 ; 2 *Cowen,* 33, 2d ed.) Besides, the suit of Olcott against Wood directly prayed for a conveyance, *inter alia*, and not merely an equivalent in money.

*By the Court,* WILLARD, P. J. The controversy embraced in the chancery suits was not respecting the claim of either party to any estate in fee or for life to real estate, which is forbidden by the statute to be submitted to arbitration. (2 *R. S.* 541, § 2.) The title to the Rew lands was admitted by the pleadings to be in Wood. The claim of the plaintiff was in the nature of a bill for a specific performance of an agreement set up in the bill. He claimed that by that contract he was

entitled to a conveyance of two-thirds of these lands, or a compensation in damages in lieu thereof. The cross-bill conceded the title to the Bingham lands to be in Olcott; and Wood claimed that by contract he was entitled to one-third of those lands, and he claimed damages only for the breach of that contract. As the cross-bill was merely a defense to the original bill, the controversy became narrowed down to this; which party had sustained the most damages by reason of the several breaches of agreement, if the latter was shown to have been broken.

The proof sustains the issue on the part of the plaintiff. Here was no submission respecting the *title* to lands. There was nothing in issue in the chancery suits, that could have been redressed by an ejectment, writ of right, or any of the actions for the recovery of real estate. The matter in controversy savored of the personalty, and the wrongs sought to be redressed could be, and were, appropriately compensated by damages.

The courts have allowed the boundary to lands to be determined by arbitration. (*Sellick* v. *Addams,* 15 *John.* 197. *Doe* v. *Rosser,* 3 *East,* 15. *Robertson* v. *McNiel,* 12 *Wend.* 578.) A decision on the question of boundary may indirectly conclude the parties as to disputed land. Yet in such cases the abstract question of title is not in issue. Each concedes to the other the title to his own lot, and the only question is where is the line by which they are divided.

The estate in land, which is forbidden to be submitted to arbitration is an estate in fee or for life. (2 *R. S.* 541, § 2.) Claims to an interest in lands for a term of years, controversies respecting the partition of lands between joint tenants and tenants in common, or concerning the boundaries of land, or the admeasurement of dower, may be submitted. Some of these could not have been the subject of arbitration at common law.

The learned judge before whom this cause was tried, placed his decision upon the ground that the claim of the plaintiff was to an equitable title to the fee of the Rew lands. And he was

of opinion that the statute inhibited the submitting to arbitration of a claim to an *equitable* fee, as well as a claim to the *legal* fee. It is not necessary to controvert that proposition. The plaintiff in the original cause did not claim an *equitable* fee. The fee was conceded to. be in another, and was not in dispute. A party who seeks the specific performance of an agreement to convey lands, or damages in lieu of such performance, is not making a claim to an estate in fee, within the meaning of the statute; he is merely seeking the performance of an agreement, or a compensation, if such agreement cannot be performed.

We think the nonsuit was improperly granted, and should be set aside and a new trial ordered, with costs to abide the event.

[FRANKLIN GENERAL TERM, July 5, 1852.   *Willard, Hand, Cady* and *C. L. Allen,* Justices.]